Filed 7/13/26  Melamed v. Cal. Physicians' Service CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| HOOMAN MELAMED, M.D. et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CALIFORNIA PHYSICIANS' SERVICE, BLUE SHIELD OF CALIFORNIA et al., <br><br> Defendants and Respondents. | B336782 <br><br> (Los Angeles County Super. Ct. No. 22STCV01382) |

APPEAL from a judgment and orders of the Superior Court of Los Angeles County, Upinder Kalra, Judge.  Reversed and remanded with directions.

Barta Law, Theresa J. Barta; Arkin Law Firm and Sharon J. Arkin, for Plaintiffs and Appellants.

Manatt, Phelps & Phillips, Gregory N. Pimstone and Joanna S. McCallum, for Defendants and Respondents.

Hooman Melamed, an orthopedic spine surgeon, sued Blue Shield of California (Blue Shield) for allegedly retaliating against him for patient advocacy in violation of Business and Professions Code section 2056[1] under the Unfair Competition Law (UCL) (§ 17200 et seq.) and for tortious interference with prospective economic advantage. Blue Shield demurred. The trial court sustained the demurrer without leave to amend and dismissed the action. Because the trial court erred in its determination that Melamed did not, and could not, properly plead proximate cause and duty, we reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

Melamed's complaint alleged that he is a physician and orthopedic spine surgeon practicing in California. California Physicians' Service is a corporation doing business as Blue Shield of California. At all relevant times, Melamed did not have an employment agreement or a participating provider contract with Blue Shield. When he treated patients that were enrolled in Blue Shield, Blue Shield was obligated under California Code of Regulations, title 28, section 1300.71, subdivisions (a)(3)(B) and (C), to pay him like any other out-of-network, non-contracted provider.[2]

---

[1] Unspecified statutory references are to the Business and Professions Code.

[2] Blue Shield is a health plan regulated under the Knox-Keene Health Care Service Plan Act of 1975 (Knox-Keene Act). (Health & Saf. Code, § 1340 et seq.)

2

A.     *The Alleged Retaliation*

Melamed alleged that he regularly advocated on behalf of his patients for Blue Shield to approve and authorize medically appropriate health care, including specialized spinal surgeries. Melamed alleged that in response to his ongoing patient advocacy, Blue Shield initiated a retaliatory campaign against him.  This alleged retaliation included subjecting his out-of-network billing claims to heightened administrative scrutiny, denying authorizations for procedures, delaying reimbursements, and wrongfully denying claims.

B.     *The First and Second Amended Complaint*

In January 2022 Melamed filed a complaint alleging five causes of action:  (1) unlawful, fraudulent, and unfair business practices; (2) retaliation in violation of section 2056;[3] (3) intentional interference with prospective economic advantage; (4) negligent interference with prospective economic advantage; and (5) willful violation of reimbursement laws.  After meeting and conferring with Blue Shield, Melamed amended his complaint.  Blue Shield demurred to the amended complaint, and

---

[3]     Section 2056 states the public policy that "a physician and surgeon be encouraged to advocate for medically appropriate health care for his or her patients."  (§ 2056, subd. (b).) "[T]erminat[ing] an employment or other contractual relationship with, or otherwise penaliz[ing], a physician and surgeon principally for advocating for medically appropriate health care … violates the public policy of this state.  No person shall terminate, retaliate against, or otherwise penalize a physician and surgeon for that advocacy."  (§ 2056, subd. (c).)

Melamed dismissed the fifth cause of action. In May 2023 the trial court overruled the demurrer as to count 1, sustained the demurrer as to count 2 without leave to amend, and sustained the demurrer as to counts 3 and 4 with leave to amend.

In June 2023 Melamed filed his Second Amended Complaint (SAC), asserting three causes of action against Blue Shield. The first cause of action was for unlawful, fraudulent, and unfair business practices based on retaliation in violation of section 2056, denying payment of claims on the false bases that the services were "not medically necessary," "investigative," or "not emergency services" in violation of California Code of Regulations, title 28, section 1300.71, and failing to make specific disclosures and making false claims of overpayment and seeking reimbursement. The second cause of action was for intentional interference with prospective economic advantage based on violations of section 2056; section 17200; California Code of Regulations, title 28, section 1300.71, subsections (a)(3)(B), (a)(3)(C), (a)(8), (b)(5), (d)(1), (d)(3) and (k); California Code of Regulations, title 28, section 1300.71.38; and Health & Safety Code section 1367, subdivision (h)(2); and Civil Code section 1710. The third cause of action was for negligent interference with prospective economic advantage based on a duty of care arising from section 2056 or a special relationship with foreseeable harm to Melamed from Blue Shield's retaliation and violations of the same code sections. The SAC included reference to an alleged communication in which a "Blue Shield Medical Director" admitted a pre-authorization should have been granted without a peer-to-peer review and documents that Melamed alleged showed Blue Shield's delay or denial of claims based on false claims of not having information.

4

Blue Shield demurred, raising four arguments: one on the unfair competition cause of action, and three on the tortious interference causes of action. On the UCL cause of action, Blue Shield argued Melamed was no longer seeking restitution or an injunction, so that cause of action failed for lack of a remedy. On the tortious interference causes of action, Blue Shield argued that they fail "because they depend on the legally untenable proposition that a health plan enforcing the terms and requirements of its member contracts has an obligation to protect the economic interests of a non-contracted, non-emergency provider" and "the Court of Appeal has never recognized an interference tort (or any other tort) by a non-contracted provider based on a health plan's procedures, processes or decisions in adjudicating benefits potentially due under its member agreements." In addition, the tortious interference claims failed because Melamed did not correct what the court had previously found to be conclusory allegations of "actual disruption" of his patient relationships. Also, Melamed was unable to allege facts supporting a duty of care for the negligent interference claim: section 2056 provided no direct claim, and policy considerations prevented a "special relationship" even if the harm were foreseeable.

Melamed opposed. Melamed argued that the demurrer to the UCL cause of action was previously overruled. Melamed also argued that his tortious interference causes of action are long-established torts, which the court previously found properly pleaded except for two elements, which had now been cured by amendment: the element of an actual disruption (for both intentional and negligent interference), and the element of duty for the negligent interference claim.

5

After an initial hearing, the court granted leave for supplemental briefing on three issues: (1) does the legislative history indicate that section 2056 applied outside of an employment or contractual context, (2) does the "or otherwise penalize" language in section 2056 suggest that the legislature contemplated non-employment or non-contractual retaliation as a basis for a cause of action, and (3) has Melamed shown "but for" causation to support his tortious interference claims, despite his allegation in paragraph 11 of the SAC? Paragraph 11 of the SAC states: "Plaintiffs are informed and believe that it is (and [at] all relevant times was) Defendant Blue Shield's business practice to delay, deny, down-code [footnote omitted] and improperly pay claims presented by OON [out of network] physicians and providers as retaliation and punishment against them (including Plaintiff) for refusing to contract with Blue Shield as an in-network physician or provider, all because of Blue Shield's focus on increasing its profits."

Blue Shield argued that the legislative history indicated that section 2056 did not apply outside of the employment or contractual context and that the "or otherwise penalize" language did not create a cause of action broader than wrongful termination. Blue Shield argued further that Melamed's allegation Blue Shield treats all out-of-network providers the same as it treats him precludes his ability to show "but for" causation for retaliation. Melamed argued that section 2056 created a private cause of action that applied in this case, even without an employment or contractual relationship between the parties. Melamed argued further that his tortious interference claims were properly pleaded. Concerning paragraph 11,

6

Melamed argued that it was an appropriate, alternative allegation.

> ### C. *The Trial Court's Ruling*

In January 2024 the trial court sustained Blue Shield's demurrer to the SAC without leave to amend.  The trial court concluded that section 2056 does not afford a private right of action and that its protections are tethered to the existence of an employment or contractual relationship, which Melamed lacked.  The trial court also sustained the demurrer to the tortious interference claims, finding that paragraph 11 of the SAC—which alleged Blue Shield treated all out-of-network providers the same regardless of any advocacy—defeated "but for" causation of Blue Shield's alleged retaliation for advocacy.  As to the negligent interference claim, the trial court sustained the demurrer on the additional basis that Melamed failed to allege a cognizable duty of care, as his sole basis for duty—section 2056—does not apply to non-contracted providers.  The trial court subsequently entered a judgment of dismissal in favor of Blue Shield.  Melamed appealed.

## DISCUSSION

Melamed's appeal focuses on his tortious interference causes of action.[4]  He argues the trial court erred in sustaining

---

[4]     Although the parties briefed the issues relating to Melamed's first cause of action (that Blue Shield engaged in unfair business practices because it retaliated against him for advocating for his patients), Melamed abandoned the argument

the demurrer to his claims for intentional interference with prospective economic advantage because he appropriately pleaded causation. He also argues that he properly pleaded negligent interference with prospective economic advantage because he was not required to allege a duty sufficient to state a negligence claim, section 2056 provides an independent actionable wrong or at least a duty, and he properly pleaded causation.

Blue Shield responds that the trial court properly sustained the demurrer because Melamed failed to allege proximate causation. In addition, Blue Shield argues the trial court's judgment can be affirmed on the alternative grounds that to allow Melamed's claims in this case would be an unprecedented expansion of a health plan's tort liability to out-of-network providers, that Melamed failed to allege a duty to support negligent interference with prospective economic advantage, and that he also failed to adequately allege actual disruption.

A.    *Standard of Review*

We review de novo a trial court's order sustaining a demurrer, exercising our independent judgment to determine whether the complaint states a cause of action under any valid legal theory. (*McCall v. PacifiCare of California, Inc.* (2001) 25 Cal.4th 412, 415.) " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law." ' " (*Zelig v. County of Los Angeles*

---

regarding the first cause of action in his reply brief and confirmed that at oral argument.

8

(2002) 27 Cal.4th 1112, 1126, quoting *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

B.    *Intentional Interference with Prospective Economic Advantage*

"Intentional interference with prospective economic advantage has five elements:  (1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action." (*Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.* (2017) 2 Cal.5th 505, 512.)  "To establish a claim for interference with prospective economic advantage, … a plaintiff must plead that the defendant engaged in an independently wrongful act." (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1158; see *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 393.)  "An act is not independently wrongful merely because defendant acted with an improper motive.…  The tort of intentional interference with prospective economic advantage is not intended to punish individuals or commercial entities for their choice of commercial relationships or their pursuit of commercial objectives, unless their interference amounts to independently actionable conduct." (*Korea Supply Co.*, at pp. 1158-1159.)  " '[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard.' " (*Ixchel Pharma, LLC v. Biogen,*

*Inc.* (2020) 9 Cal.5th 1130, 1142.) The arguments on the intentional interference cause of action focus on proximate cause and actual disruption.

### 1. *Proximate Cause*

Melamed argues that the trial court erred in finding that paragraph 11 of the SAC—which alleged Blue Shield treated all out-of-network providers the same regardless of any patient advocacy—defeated "but for" causation because the allegation was consistent with Melamed's allegation that Blue Shield was retaliating against him. To the extent they could be seen as inconsistent, Melamed could properly make alternative arguments at the pleading stage. Also, Melamed states that in addition to retaliation under section 2056, he alleged violations of "*other statutes and regulations*" and "those statutory obligations have nothing to do with section 2056."

"One of the concepts included in the term proximate cause is cause in fact, also referred to as actual cause." (*Mitchell v. Gonzales* (1991) 54 Cal.3d 1041, 1049.) " 'There are two widely recognized tests for establishing cause in fact. The "but for" or "sine qua non" rule … asks whether the injury would not have occurred but for the defendant's conduct. The other test … asks whether the defendant's conduct was a substantial factor in bringing about the injury.' " (*Ibid.*) The Supreme Court ultimately disapproved of the "but for" formulation, concluding that the "substantial factor" language was more intelligible and easily applied. (*Id.* at pp. 1053-1054.) " 'A cause of injury, damage, loss or harm is something that is a substantial factor in bringing about an injury, damage, loss or harm.' " (*Franklin v. Dynamic Details, Inc.* (2004) 116 Cal.App.4th 375, 391

10

[describing causation for a tortious interference with prospective economic advantage cause of action].)

While it is possible to show causation with "multiple forces operating at the same time and independently, each of which would have been sufficient by itself to bring about the harm" (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1240 [noting various labels, including " 'multiple sufficient causes' " or " 'concurrent independent causes' "]; see *Barton v. Owen* (1977) 71 Cal.App.3d 484, 503-504), here the allegations are not two independent causes but rather two possible motives[5] for Blue Shield's alleged wrongful acts—violations of section 2056; Civil Code, section 1710; California Code of Regulations, title 28, section 1300.71, subdivisions (a)(3)(B), (a)(3)(C), (a)(8), (b)(5), (d)(1), (d)(3), and (k);[6] Health & Safety Code, section 1367(h)(2); and California Code of Regulations, title 28, section 1300.71.38. For example, Melamed alleged Blue Shield made false statements and representations that some requested services were "not medically necessary" or "investigative," which caused existing patients to not continue receiving services from Melamed and resulted in Melamed not receiving expected income from

---

[5] Blue Shield's alleged motive of retaliation for advocacy or for being out-of-network may be relevant to whether it intentionally did the alleged wrongful acts, and Blue Shield did not argue that Melamed did not sufficiently allege intention.

[6] It is unclear whether some of these subdivisions can be violated and thus be wrongful conduct. For example, subdivisions (a)(3)(B), (a)(3)(C), and (a)(8) appear to be definitions of various terms. However, Blue Shield's demurrer "did not challenge" the sufficiency of "Blue Shield's alleged wrongful conduct."

treating those patients.  Other allegations include violation of California Code of Regulations, title 28, section 1300.71, subdivision (d)(1) (failure to provide an accurate and clear written explanation of the specific reasons for denying, adjusting, or contesting a claim, within the specified timeframes) and California Code of Regulations, title 28, section 1300.71.38 (failure to establish and maintain a dispute resolution mechanism).  We interpret, as we must, Melamed's factual allegations as true for the purposes of this demurrer.  (See *Blank v. Kirwan*, *supra*, 39 Cal.3d  at p. 318; *Venice Town Council v. City of L.A.* (1996) 47 Cal.App.4th 1547, 1557 ["For purposes of this appeal we accept as true the properly pled factual allegations of the complaint."].)  To the extent Blue Shield made false statements that certain procedures were not medically necessary and would not be covered as part of a pre-authorization process, it is a substantial factor in causing Melamed's existing patients to discontinue his services, resulting in economic harm to him.

Blue Shield does not dispute that Melamed sufficiently alleged wrongful conduct, stating "[a] plan's acts in retaliation for patient advocacy violate section 2056 and are 'independently wrongful.' "  Instead, Blue Shield argues that the law allows it to treat out of network providers differently:  "But Blue Shield's purported different treatment of non-contracted providers' claims, with a 'focus on increasing its profits'  …  is not wrongful; rather, this is 'lawful competitive behavior.' "  "Blue Shield's alleged 'retaliation' by delaying or denying claims because Melamed was non-contracted is lawful, not independently wrongful, even if it allegedly resulted in disruption of Melamed's economic advantage."  Blue Shield argues that health plans may

" 'deliberately discourage[] members from going out of network by paying lower reimbursement rates and holding the member responsible for the unpaid balance,' " quoting *Orthopedic Specialists of Southern California v. Public Employees' Retirement System* (2014) 228 Cal.App.4th 644, 648 (*Orthopedic Specialists*).

While a health plan "itself [may] determine what is an appropriate amount to pay an out-of-network provider for nonemergency services" (*Orthopedic Specialists, supra,* 228 Cal.App.4th at p. 648) and has other advantages under California's managed health care statutory scheme, its statutory powers are not unlimited. Tortious interference with prospective economic advantage may impose liability where an entity engages in independently wrongful conduct, "wrongful 'by some measure beyond the fact of the interference itself.' " (*Della Penna v. Toyota Motor Sales, U.S.A., Inc., supra,* 11 Cal.4th 376 at p. 393.) Where a health plan violates statutory, regulatory, or other determinable legal standards as alleged by Melamed, it may be liable.

Blue Shield argues that two of Melamed's contentions in the complaint are mutually exclusive: first, that Blue Shield wrongfully retaliated against him for advocating for medically necessary care for his patients; and second, that Blue Shield retaliated and punished all out-of-network providers for refusing to contract with it. The specific allegation is not inconsistent with the general allegation. But in any event, to the extent that Blue Shield has engaged in independently wrongful conduct, e.g., falsely claiming a procedure is not "medically necessary" when it is, the two motives do not render Melamed's allegation of causation defective.

Blue Shield argues *Kasparian v. County of Los Angeles* (1995) 38 Cal.App.4th 242, 271 supports the trial court's sustaining of the demurrer. In *Kasparian*, however, the court reviewed a jury verdict for substantial evidence. While it did state the issue of causation using "but for" language (*ibid.* ["As a matter of law, there is a threshold causation requirement in order to establish the tort of intentional interference with prospective economic advantage. What is required is 'proof that it is *reasonably probable* that the lost economic advantage would have been realized *but for* the defendant's interference.' "]), *Kasparian* involved a failure of proof presented to a jury, not an arguable conflict in allegations at the pleading stage. *Kasparian* does not advance the argument.

Blue Shield argues further that paragraph 11 acts as a judicial admission. The requirements for establishing a judicial admission are not present here. "A judicial admission is a party's unequivocal concession of the truth of a matter." (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 48.) A judicial admission is " 'a *waiver of proof* of a fact by conceding its truth.' " (*Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1271 [" 'When allegations in a complaint are admitted by the answer (a) no evidence need be offered in their support; (b) evidence is not admissible to prove their untruth; (c) no finding thereon is necessary; (d) a finding contrary thereto is error."].) "An unclear or equivocal statement does not create a binding judicial admission." (*Stroud v. Tunzi* (2008) 160 Cal.App.4th 377, 385, citing *Gelfo v. Lockheed Martin Corp.*, at p. 48.) In addition, "California law permits the pleading of inconsistent factual theories where facts are not positively stated but based on information and belief." (*Koenig v. Centralia*

14

*Limited Investors* (2025) 112 Cal.App.5th 1174, 1189, fn. 12, citing *Adams v. Paul* (1995) 11 Cal.4th 583, 593; see *Mendoza v. Continental Sales Co.* (2006) 140 Cal.App.4th 1395, 1402.) Here, Melamed's SAC clearly alleges that Blue Shield has retaliated against him for patient advocacy, and it is unclear what paragraph 11, stated on information and belief, adds to it. It could mean that Blue Shield is retaliating against all out-of-network providers. It could also mean that Blue Shield is retaliating against Melamed because of his advocacy and his out-of-network status.

Furthermore, paragraph 11 is an alternative general contention. " 'In evaluating a demurrer, we assume the truth of all material facts properly pleaded in the complaint … but no such credit is given to pleaded contentions or legal conclusions. [Citations.] Specific factual allegations modify and limit inconsistent general statements.' " (*Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1371, quoting *B & P Development Corp. v. City of Saratoga* (1986) 185 Cal.App.3d 949, 952-953.) Melamed's more specific allegations that Blue Shield retaliated against him for patient advocacy are properly read to limit the general statement.

Moreover, even if these allegations are read as contradictory, Melamed's SAC is not verified, and the rule against pleading contradictory facts does not apply. (*The Travelers Indemnity Co. of Connecticut v. Navigators Specialty Ins. Co.* (2021) 70 Cal.App.5th 341, 360, fn. 15 ["Travelers' third amended complaint was not verified, and thus the rule cited by Navigators prohibiting the pleading of contradictory or antagonistic facts does not apply."].) "[M]odern

15

rules of pleading generally permit plaintiffs to 'set forth alternative theories in varied and inconsistent counts.' " (*Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1388.)

Melamed has alleged Blue Shield acted in violation of various statutes and regulations in delaying and denying medically necessary procedures, which caused his existing patients to not continue receiving treatments and procedures under his care. This sufficiently alleged proximate cause in this case.

### 2.     *Actual Disruption*

The trial court sustained Blue Shield's demurrer to the tortious interference causes of action in the FAC because they did "not indicate how [Blue Shield's conduct] disrupted or what was disrupted other than treating patients." On the SAC, the trial court shifted its rationale for sustaining the demurrer to a failure to sufficiently allege proximate cause. Blue Shield argues that the failure to plead actual disruption was not corrected in the SAC and the judgment can be affirmed on this alternative basis. Melamed argues its amendments were sufficient and accordingly the court did not state that the SAC also failed to sufficiently plead actual disruption.

"If the trial court's ruling on a motion for judgment on the pleadings is correct upon any theory of law applicable to the case, we will affirm it, even if we may disagree with the trial court's rationale." (*Stevenson Real Estate Services, Inc. v. CB Richard Ellis Real Estate Services, Inc.* (2006) 138 Cal.App.4th 1215, 1220, citing *Schabarum v. California Legislature* (1998) 60 Cal.App.4th 1205, 1216.)

16

The FAC only stated the conclusion that Blue Shield "interfered with, and disrupted, [his] economic relationships" and "ability to treat his existing patients." In contrast, the SAC added the specifics that Blue Shield's actions, including false statements that services (which included tests, procedures, treatments, and surgeries) "were 'not medically necessary' or 'investigative', thus causing the patients to not continue with receiving the services from [Melamed], thus resulting in [him] not receiving expected income that [he] would have received from the patients for medical services." Melamed alleged the actual disruption was his existing patients not continuing to receive tests, procedures, treatments, and surgeries from him. This is a sufficient allegation of actual disruption for this case.

C.      *Negligent Interference with Prospective Economic Advantage*

" 'The tort of negligent interference with prospective economic advantage is established where a plaintiff demonstrates that (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship.' "

17

(*Venhaus v. Shultz* (2007) 155 Cal.App.4th 1072, 1078, quoting *North American Chemical Co. v. Superior Court* (1997) 59 Cal.App.4th 764, 786.)

Intentional and negligent interference with prospective economic advantage include the same requirements of proximate cause and actual disruption. Neither side argues that the analysis of proximate cause for negligent interference differs from that for intentional interference, so our determination that Melamed properly pleaded causation for intentional interference also applies to negligent interference. Similarly, both sides argue the element of actual disruption as to both varieties of tortious interference without differentiation, so our determination that Melamed properly pleaded actual disruption for intentional interference also applies to negligent interference.

In addition, the trial court determined "the conclusionary statement 'foreseeability of harm' does not plead facts sufficient to establish a new tort duty" and concluded that Melamed failed to "sufficiently allege any basis for a duty that would allow for a negligence cause of action." Melamed argues that "at the very least, section 2056 imposes a duty of care on health care plans not to retaliate against providers."

### 1. Duty of care

"To state a cause of action for negligence, a plaintiff must establish the defendant owed a legal duty of care." (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 209 (*Brown*).) "Liability for negligent conduct may only be imposed where there is a duty of care owed by the defendant to the plaintiff or to a class of which the plaintiff is a member." (*J'Aire Corp. v. Gregory* (1979) 24 Cal.3d 799, 803.) "A duty of care may arise through statute or

18

by contract.  Alternatively, a duty may be premised upon the general character of the activity in which the defendant engaged, the relationship between the parties or even the interdependent nature of human society." (*Ibid*.)  "Whether a duty is owed is simply a shorthand way of phrasing what is ' "the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." ' " (*Ibid*.)

"Generally speaking, all persons have a duty to take reasonable care in their activities to avoid causing injury, though particular policy considerations may weigh in favor of limiting that duty in certain circumstances." (*Brown, supra*, 11 Cal.5th at p. 209.)  Civil Code section 1714 states the general rule: "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person."  (Civ. Code, § 1714, subd. (a).)  "In other words, 'each person has a duty to use ordinary care and "is liable for injuries caused by his failure to exercise reasonable care in the circumstances." ' " (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 771 (*Cabral*); accord *Brown*, at pp. 213-214 [explaining the general rule that everyone is responsible for an injury caused by his or her want of ordinary care but not to control the conduct of another " 'derives from the common law's distinction between misfeasance and nonfeasance, and its reluctance to impose liability for the latter' "].)  "However, 'one owes no duty to control the conduct of another, nor to warn those endangered by such conduct.' " (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 619; accord, *Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 235 ["as a general matter, there is no duty to act to protect others from the

19

conduct of third parties"].)  Here, Melamed has alleged that Blue Shield's actions to retaliate against him by violating portions of the Knox-Keene Act caused his patients to cease using his services.  The issue is not Blue Shield's duty to protect but rather its duty to use ordinary care to avoid causing injury to him.

The general analysis of a tort duty is a two-step inquiry.  First, the court must determine whether there exists an affirmative duty.  Second, if so, the court must consult the factors described in *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650 (*Biakanja*) and *Rowland v. Christian* (1968) 69 Cal.2d 108, 113 (*Rowland*) to determine whether relevant policy considerations limit that duty.  (See *Brown*, *supra*, 11 Cal.5th at p. 209 [applying the *Rowland* factors in the non-business context of a duty to protect from other's abuse]; *Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1013-1014 [applying *Biakanja* factors in the business context of a health care plan's duty of care in delegating financial responsibility].)  In *Biakanja* and *Rowland*, the Supreme Court "identified several considerations that, when balanced together, may justify a departure from the fundamental principle embodied in Civil Code section 1714."  (*Cabral*, *supra*, 51 Cal.4th at p. 771.)  " '[I]n the absence of a statutory provision establishing an exception to the general rule of Civil Code section 1714, courts should create one only where "clearly supported by public policy." ' "  (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1143.)

Blue Shield argues that Melamed cannot allege a duty for negligent interference with prospective economic advantage.  Although it does not dispute that a "plan's acts in retaliation for

patient advocacy violate section 2056 and are 'independently wrongful,' " Blue Shield argues that "section 2056 prohibits *intentional* acts" and that "[i]t makes no sense that a statute imposing an obligation not to take certain intentional actions can be the source of a general negligence duty of care." Section 2056 addresses retaliation, which indicates an intentional action, and this is more consistent with the intentional interference cause of action. But Melamed also alleges violations of various statutes and regulations, and these are more straightforward bases for negligent interference with prospective economic advantage.

Furthermore, Melamed alleges that Blue Shield's actions, not inaction, were the cause of his economic harm. Melamed argues that Blue Shield's retaliatory actions are violations of the statutory requirements of the Knox-Keene Act. The general duty of taking ordinary care in the conduct of one's activities is the focus. Melamed's SAC alleging Blue Shield's actions in violation of statute (e.g., delaying and denying appropriate medical treatments) that caused him economic harm sufficiently alleged a duty for negligent interference with prospective economic advantage.[7]

The trial court did not proceed to the second step and perform a *Biakanja/Rowland* analysis. Neither party cited these

_____

[7]     Given the general duty to use ordinary care in the management of one's own property or person, alleging a special relationship is not required here. (See *Brown*, *supra*, 11 Cal.5th at pp. 214-215 [explaining that although "[g]enerally ' "one owes no duty to control the conduct of another," ' " and "a person may have an affirmative duty to protect the victim of another's harm if that person is in what the law calls a 'special relationship' with either the victim or the person who created the harm"].)

21

cases or addressed their factors to argue that a categorical exception to that general rule should be made exempting health plans from potential liability to out-of-network physicians for failure to abide by the requirements of section 2056; California Code of Regulations, title 28, sections 1300.71 and 1300.71.38; Health & Safety Code section 1367; and Civil Code section 1710.[8] Accordingly, we need not address the issue further.

---

[8] Blue Shield moves to strike Melamed's argument and references to *Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.*, *supra*, 1 Cal.5th 994 arguing that he failed to address the issue in his opening brief. Melamed notes that issue was litigated extensively before the trial court, that he addressed the duty issue in his opening brief, and that Blue Shield cited *Centinela* in its brief. The parties have adequately briefed the issue, and we deny the motion to strike.

In his reply brief, Melamed requests that this court take judicial notice of several pages of Blue Shield's purported financial information from internet sources. We deny the request for judicial notice. (See *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 687, fn. 10 ["[a]n appellate court 'may decline to take judicial notice of matters not relevant to dispositive issues on appeal' "]; *Brosterhous v. State Bar* (1996) 12 Cal.4th 315, 325-326 ["appellate court may properly decline to take judicial notice under Evidence Code sections 452 and 459 of a matter which should have been presented to the trial court for its consideration in the first instance"].)

## DISPOSITION

We reverse the judgment sustaining the demurrer on the tortious interference causes of action and remand.  The trial court is directed to vacate its order and enter a new one overruling the demurrer on the second and third causes of action for tortious interference with prospective economic advantage by Blue Shield's alleged retaliation against Melamed for advocating for medically appropriate treatment and delay and denial of appropriate claims for services in violation of the identified statutes and regulations.  Blue Shield's motion to strike and Melamed's request for judicial notice are denied.  Melamed is entitled to his costs on appeal.

GIZA, J.[*]

We concur:


SEGAL, J., Acting P. J.


FEUER, J.

---

[*]     Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.